57 107
138a 610

JAMES W. COOKE AND LYDIA COOKE, RESPONDENTS, *v.* THE UNDERHILL MANUFACTURING COMPANY, APPELLANT.

*Sale of a chattel — guaranty that it will give satisfaction or be removed — user thereof, by the purchaser, after a direction given by him to remove it, not evidence of acceptance.*

Where the vendor of a steam engine has guaranteed that it will give satisfaction and has agreed, in case it does not, to take it out, and after the engine has been in use for some six months the vendor is directed by the purchaser to remove the engine on the ground that it does not give satisfaction, which request the vendor fails to comply with, it is not proper for the court, in an action brought to recover the purchase-price of the engine, to submit to the jury the question whether a subsequent user of the engine by the purchaser was of such a character as to constitute an acceptance thereof, there being nothing else shown, except such user, to establish an acceptance.

APPEAL by the defendant, the Underhill Manufacturing Company, from a judgment, entered in the office of the clerk of the county of New York on the 25th day of November, 1889, after a trial before the court and a jury at the New York Circuit, at which a verdict was rendered for the plaintiffs in the sum of $2,115.80.

*James Dunne*, for the appellant.

*Chas D. Baker*, for the respondents.

VAN BRUNT, P. J.:

This action was brought to recover for an engine proposed to be furnished, delivered and set up by the plaintiffs for the defendant. Under the contract the plaintiffs were to build the foundation, the defendant to do the excavating, filling or piling that might be necessary to secure a firm sub-foundation. The plaintiffs guaranteed this engine to be built in the very best manner, and to be as durable and economical as any automatic engine. In short, to use their own language, " We guaranteed to give satisfaction or to take it out at our expense." The engine was put in and started in April, 1887. Certain complaints having been made as to the engine, tests were made, and on the 28th of November, 1887, the defendant wrote that the engine was not giving satisfaction, and the plaintiffs were asked to remove it. On the thirtieth of November the plaintiffs were again asked to remove it, and, without considering in detail

the evidence produced upon the trial, it is sufficient to say that up to this time it was conceded that the engine had not been accepted.

Other evidence was introduced showing that subsequent to that time the engine was used by the defendant, and the question submitted to the jury was whether this user was of such a character as constituted an acceptance of the engine. The learned court was asked to charge the jury that, if they found that the defendant never intended to and did not, in fact, accept the engine, then their verdict should be for the defendant. This the court refused to charge except as it had charged, leaving the question as to whether there was an implied acceptance still for the jury to determine.

We think, upon the conceded facts of the case, that there was no such question which could be submitted to the jury. On the 28th of February, 1888, the engine was absolutely rejected by the defendant; and if they had a right at that time to reject, then there never had been an acceptance. We think that an examination of the correspondence shows that not only had there never been an acceptance up to that time, but that the plaintiffs so understood it. On the 10th of February, 1888, the plaintiffs wrote, "We are quite anxious to know what decision you have come to about the engine." If it had already accepted the engine, what decision could the defendant come to in respect to the engine which would be of any interest to the plaintiffs?

It is clear that at the time of writing that letter the plaintiffs did not understand that the defendant had accepted this engine. On the 21st of February, 1888, the defendant wrote, "We have no reason to change our views expressed in our letter of November 30, 1887," up to which time it is admitted there had been no acceptance. "As you are aware, the engine has remained at Franklin at your request. The sooner you can have it removed the more agreeable it will be to us." What is the answer of the plaintiffs? On the 25th of February, 1888, they write, acknowledging the receipt of this letter of the twenty-first, "Before taking any decided action we want to make a statement of the case as it appears to us, and will endeavor to be as brief as possible. We have no hesitation in saying, what you, no doubt, already have inferred, that we do not want the engine to come out, and this for various reasons," stating them. "There are two reasons why the engine does not satisfy you, and for neither of these should we be

held responsible." And then follows an argument to show that they should not be held responsible for those reasons. And the plaintiffs claim that it is not fair, in view of all the facts, that they should be held to a technical interpretation of the promise that the engine should be entirely satisfactory to the defendant. And the letter closes expressing the hope "that a consideration of the case, as above stated, may lead you to look upon the matter in a light more favorable to us. If, however, you are fixed in your determination, there is one preliminary point which should be understood. If we admit (which we do not), that we must take the engine out under your instructions, what is to become of the foundation?"

There is not a single pretense in this correspondence that the plaintiffs understood that the defendant had accepted this engine, or that it had not a right still to reject it, if it did not comply with the contract. The phrase "If we admit (which we do not), that we must take the engine out under your instructions, what is to become of the foundation?" was a dissent from nothing except that the engine could be taken out if the defendant desired, whether it complied with the contract or not. There was no pretense that it could not be taken out if it did not comply with the contract. And there was no pretense that the defendant had no right to claim that it could be taken out because they had accepted it. Upon the same day the defendant writes that it does not comply with the contract and that it was not satisfactory; and on the twenty-eighth that the engine was subject to the plaintiffs' order and risk.

In view of this correspondence, it is difficult to see how the mere user of the engine during this period could be or was looked upon by either of these parties as an acceptance thereof. In fact, up to the very time when the correspondence ceased and the user of the engine ceased, it was conceded, upon the part of the plaintiffs in their letters, that there had been no acceptance, and they were negotiating with the defendant for the purpose of getting them to accept it.

We think, therefore, that there was no question upon acceptance which could be submitted to the jury. The only question was as to whether the engine complied with the contract or not, and the defendant obliged to accept. This question does not appear to have been submitted to the jury; and we think that where both parties assume that up to the time of rejection there was a right to reject,

and dealt with each other upon that basis, the jury should not be allowed to come to a different conclusion and say, under the circumstances, there had been a sufficiently long user to constitute an acceptance.

There seems to have been error in refusing the request charged, and the judgment must be reversed and a new trial ordered, with costs to appellant to abide event.

BRADY and DANIELS, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.